1   Karen L. Dunn (*pro hac vice*)
    kdunn@paulweiss.com
2   William A. Isaacson (*pro hac vice*)
    wisaacson@paulweiss.com
3   Kyle N. Smith (*pro hac vice*)
    ksmith@paulweiss.com
4   Erica Spevack (*pro hac vice*)
    espevack@paulweiss.com
5   **PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP**
6   2001 K Street, NW
    Washington, DC 20006
7   Telephone: (202) 223-7300

8   Joshua Hill Jr. (SBN 250842)
    jhill@paulweiss.com
9   R. Rosie Vail (SBN 317977)
    rvail@paulweiss.com
10  **PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP**
11  535 Mission Street, 24th Floor
    San Francisco, CA 94105
12  Telephone: (628) 432-5100

13  *Attorneys for Defendant*
    UBER TECHNOLOGIES, INC.
14

    Rohit K. Singla (SBN 213057)
    Rohit.Singla@mto.com
    Justin P. Raphael (SBN 292380)
    Justin.Raphael@mto.com
    **MUNGER, TOLLES & OLSON LLP**
    560 Mission Street
    San Francisco, CA 94105
    Telephone: (415) 512-4000

    *Attorneys for Defendant*
    LYFT, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND

| | |
|---|---|
| TAJE GILL, ESTERPHANIE ST. JUSTE, and BENJAMIN VALDEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., a Delaware corporation, and LYFT, INC., a Delaware corporation,<br><br>Defendants. | Case No. 4:22-cv-04379-JSW<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Hearing Date: January 20, 2023<br>Time: 9:00 a.m.<br>Judge: Hon. Jeffrey S. White<br>Courtroom: 5 – 2nd Floor |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................................1

II.  BACKGROUND .....................................................................................................................2

III. LEGAL STANDARD..............................................................................................................3

IV. ARGUMENT ...........................................................................................................................4

    A.   Plaintiffs' Claims of Unilateral Abuse of Market Power Necessarily Raise a Federal Question. ........................................................................................................................4

    B.   Plaintiffs' Contrary Arguments Are Unpersuasive ......................................................7

    C.   The Federal Questions Necessarily Raised by Plaintiffs' Claims Are Disputed, Substantial, and Can Be Resolved in a Federal Court Consistent with Principles of Federalism. ..................................................................................................................11

V.   CONCLUSION......................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arco Env't Remediation L.L.C.* v. *Dep't of Health & Env't Quality*,
  213 F.3d 1108 (9th Cir. 2000) ................................................................................................ 4

*Beverage* v. *Apple Inc.*,
  Case No. 20CV370535 (Cal. Super. Aug. 29, 2022) ............................................................... 8

*Burdell* v. *Grandi*,
  152 Cal. 376 (1907) ................................................................................................................. 9

*Chavez* v. *Whirlpool*,
  93 Cal. App. 4th 363 (2001) .................................................................................................... 8

*Chi. Title Ins. Co.* v. *Great W. Fin. Corp.*,
  69 Cal. 2d 305 (1968) ............................................................................................................ 10

*In re Cipro Cases I & II*,
  121 Cal. App. 4th 402 (2004) .................................................................................................. 9

*In re Cipro Cases I & II*,
  61 Cal. 4th 116 (2015) ............................................................................................................. 9

*Copperweld Corp.* v. *Indep. Tube Corp.*,
  467 U.S. 752 (1984) ................................................................................................................ 5

*Dimidowich* v. *Bell & Howell*,
  803 F.2d 1473 (9th Cir. 1986) ................................................................................................. 5

*Eichman* v. *Fotomat Corp.*,
  759 F.2d 1434 (9th Cir. 1985) ............................................................................................... 12

*Exxon Corp.* v. *Sup. Ct.*,
  51 Cal. App. 4th 1672 (1997) .................................................................................................. 9

*Franchise Tax Bd. of Cal.* v. *Constr. Laborers Vacation Tr.*,
  463 U.S. 1 (1983) .................................................................................................................... 4

*Free Freehand Corp.* v. *Adobe Sys. Inc.*,
  852 F. Supp. 2d 1171 (N.D. Cal. 2012) ................................................................................... 5

*Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005) .......................................................................................................... 3, 11

*Gunn* v. *Minton*,
  568 U.S. 251 (2013) .............................................................................................. 3, 4, 11, 12

*Harper* v. *San Diego Transit Corp.*,
   764 F.2d 663 (9th Cir. 1985) ................................................................................................ 4

*Harris* v. *Capitol Recs. Distrib. Corp.*,
   64 Cal. 2d 454 (1966) ......................................................................................................... 10

*Lippitt* v. *Raymond James Fin. Servs., Inc.*,
   340 F.3d 1033 (9th Cir. 2003) .............................................................................................. 4

*Lorenzo* v. *Qualcomm Inc.*,
   603 F. Supp. 2d 1291 (S.D. Cal. 2009) ................................................................................ 9

*Marrese* v. *Am. Acad. of Orthopaedic Surgeons*,
   470 U.S. 373 (1985) ........................................................................................................... 12

*Merrill Lynch, Pierce Fenner & Smith Inc.* v. *Manning*,
   578 U.S. 374 (2016) .................................................................................................... 1, 8, 9

*Molina Healthcare, Inc.* v. *Celgene Corp.*,
   2022 WL 161894 (N.D. Cal. Jan. 18, 2022) ....................................................................... 11

*Nat'l Credit Reporting Ass'n* v. *Experian Info. Sols., Inc.*,
   2004 WL 1888769 (N.D. Cal. July 21, 2004) ............................................................. *passim*

*In re NFL's Sunday Ticket Antitrust Litig.* (*Sunday Ticket*),
   2016 WL 1192642 (C.D. Cal. Mar. 28, 2016) ............................................................. *passim*

*Rosenman* v. *Facebook Inc.*,
   2021 WL 3829549 (N.D. Cal. Aug. 27, 2021) ............................................................ *passim*

*Somerville* v. *Stryker Orthopaedics*,
   2009 WL 113369 (N.D. Cal. Jan. 16, 2009) ..................................................................... 5, 8

*U.S. Golf Ass'n* v. *Arroyo Software Corp.*,
   69 Cal. App. 4th 607 (1999) .............................................................................................. 12

*Yocupicio* v. *PAE Grp., LLC*,
   795 F.3d 1057 (9th Cir. 2015) .............................................................................................. 3

**Statutes**

28 U.S.C. § 1331 ......................................................................................................................... 3

28 U.S.C. § 1441 ......................................................................................................................... 3

Cal. Bus. & Prof. Code § 16720 ................................................................................................. 5

Cal. Bus. & Prof. Code § 17045 ............................................................................................... 10

## I. INTRODUCTION

Plaintiffs' Complaint belongs in federal court because it necessarily raises substantial, disputed questions of federal antitrust law. Plaintiffs contend that Uber and Lyft have each independently abused their alleged market power to impose a series of allegedly unfavorable policies and terms on drivers who use their respective apps. Such claims of unilateral abuse of market power necessarily implicate federal law because they could arise only under Section 2 of the Sherman Act, and not California law.

Federal courts in California have repeatedly concluded that federal jurisdiction is present in cases alleging unilateral abuse of market power. *Rosenman* v. *Facebook Inc.*, 2021 WL 3829549 (N.D. Cal. Aug. 27, 2021); *In re NFL's Sunday Ticket Antitrust Litig.* (*Sunday Ticket*), 2016 WL 1192642 (C.D. Cal. Mar. 28, 2016); *Nat'l Credit Reporting Ass'n* v. *Experian Info. Sols., Inc.*, 2004 WL 1888769 (N.D. Cal. July 21, 2004). Those cases, like this one, involved claims that purportedly relied only on state law violations. But the federal courts found that the theories of monopolization underlying those claims could arise only under federal law and declined to remand the cases on that basis. The same outcome is warranted here.

To avoid *Sunday Ticket* and *Rosenman*, Plaintiffs argue that those decisions are "wrong," but the case on which Plaintiffs rely—*Merrill Lynch, Pierce Fenner & Smith Inc.* v. *Manning*, 578 U.S. 374 (2016)—proves just the opposite, affirming that federal jurisdiction over a nominal "state-law claim" is appropriate where "the claim's very success" depends on federal law. *Id.* at 383–84. Nor are *Sunday Ticket* and *Rosenman* distinguishable by virtue of Plaintiffs' framing of their allegations as challenging separate "vertical agreements" based upon terms between Uber and drivers, and Lyft and drivers. Like here, *Rosenman* and *Sunday Ticket* each involved contractual terms that the defendants' customers signed in order to use defendants' products and services. The courts in those cases still found that the plaintiffs' theories that defendants abused their market power to impose those terms could potentially implicate only federal monopolization law and thus necessarily raised a federal issue. As for *National Credit Reporting*, Plaintiffs attempt to distinguish it based on the fact that the complaint explicitly spelled out that it was invoking federal law, but the court's analysis was that the "plaintiff could not have avoided borrowing Section 2 of

OPPOSITION TO MOTION TO REMAND
Case No. 4:22-cv-04379-JSW

the Sherman Act" because "the gravamen of plaintiff's complaint was that each defendant had unilaterally engaged in anticompetitive conduct to maintain or augment its monopoly." 2004 WL 1888769, at *3.

Plaintiffs thus fall back on a theory not pled in their Complaint: that their claims could arise solely under state law because California recognizes a claim for common law "monopolization." But Plaintiffs cite no authority recognizing a California law monopolization claim and federal precedent is to the contrary.

Plaintiffs' Complaint raises questions about the terms that each Defendant offers drivers. Plaintiffs' allegations thus focus on each Defendant's unilateral conduct and therefore necessarily raise issues only under Section 2 of the federal Sherman Act.[1] Multiple courts have held that such theories implicate federal jurisdiction. This Court should reach the same conclusion.

## II. BACKGROUND

Defendants Uber Technologies, Inc. and Lyft, Inc. provide mobile applications (more commonly known as "apps") that match independent transportation providers with individuals seeking rides. Plaintiffs are three California residents who have used Uber's and Lyft's apps as drivers to provide rides to consumers. Plaintiffs purport to bring this action individually and on behalf of all California-resident drivers who used the Uber or Lyft app (or both) within the four years prior to the filing of the Complaint and opted out of the rideshare companies' arbitration agreements. Compl. ¶ 146.

Plaintiffs allege that Uber and Lyft have a "duopoly," *id.* ¶ 1, in which each has significant market power. *Id.* ¶¶ 104–115. Plaintiffs do not allege that Uber and Lyft have entered into an agreement with each other. Instead, Plaintiffs allege that Uber and Lyft have each independently and unilaterally abused their market power by imposing certain terms and conditions on drivers in order for drivers to use each company's app. Mot. at 1–2; Compl. ¶ 154. Specifically, Plaintiffs allege that each company forces drivers "to surrender their pricing autonomy . . . as a condition of

---

[1] Though the allegations of unilateral conduct that lie at the heart of Plaintiffs' Complaint necessarily raise a disputed federal question, this does not mean that Defendants concede that Plaintiffs have adequately alleged that either Uber or Lyft has violated Section 2 of the Sherman Act, or any other of their purported causes of action.

working with" that company, Compl. ¶ 34, and that each company has acted "to increase passenger fares substantially in recent years," *id.* ¶ 44. Plaintiffs further allege that each company "var[ies] consumer prices via hidden algorithms during certain times and in certain locations," *id.* ¶ 46, and "operate[s] other secretive compensation schemes administered through hidden algorithms," *id.* ¶ 62. According to Plaintiffs, each company's alleged "leverage over drivers" with respect to these incentives "pressures drivers to accept all offered rides." *Id.* ¶ 73. Finally, Plaintiffs allege that each company "disclose[s] only partial information to their drivers about ride offers, providing additional information only to drivers who commit to using primarily one particular app." *Id.* ¶ 78. Plaintiffs allege that each company's independent "ability to impose disadvantageous terms on drivers" and "significantly decrease the compensation paid to drivers without a significant number of drivers switching to a different app or exiting the market entirely" evinces each company's alleged abuse of market power. *Id.* ¶ 115.

Plaintiffs allege that this conduct violates California's Cartwright Act, the Unfair Competition Law ("UCL"), and the Unfair Practices Act. As explained below, however, the unilateral conduct Plaintiffs allege necessarily raises issues only under Section 2 of the Sherman Act and thus gives rise to federal jurisdiction.

### III. LEGAL STANDARD

A defendant may remove a civil action from state to federal court if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Among other grounds, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal jurisdiction exists if any one of the Plaintiffs' claims arises under federal law. *Yocupicio* v. *PAE Grp., LLC*, 795 F.3d 1057, 1061 (9th Cir. 2015).

Under what is known as the *Grable* doctrine, a case "arises under" federal law if it presents a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). In addition, a plaintiff "may not defeat removal by omitting to

plead necessary federal questions in a complaint." *Nat'l Credit Reporting*, 2004 WL 1888769, at *2 (citing *Franchise Tax Bd. of Cal.* v. *Constr. Laborers Vacation Tr.*, 463 U.S. 1, 22 (1983)). Even where "a federal question does not appear on the face of the complaint," a "federal court may exercise removal" if the "right to relief depends on the resolution of a substantial, disputed federal question." *Id.* (citing *Arco Env't Remediation L.L.C.* v. *Dep't of Health & Env't Quality*, 213 F.3d 1108, 1114 (9th Cir. 2000)); *Lippitt* v. *Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). A plaintiff cannot "avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law." *Harper* v. *San Diego Transit Corp.*, 764 F.2d 663, 666 (9th Cir. 1985).[2]

## IV.    ARGUMENT

Plaintiffs' Complaint challenges each Defendant's unilateral conduct toward drivers with whom it has a vertical relationship: Uber's conduct as to features of the Uber app available to drivers, and Lyft's conduct as to features of the Lyft app available to drivers. The thrust of Plaintiffs' claims is that Uber and Lyft each unilaterally abuse their alleged market power by imposing unfavorable terms on drivers. Plaintiffs are thus asserting a theory of monopolization or attempted monopolization, which raises issues only under Section 2 of the Sherman Act. Plaintiffs' claims therefore necessarily raise a substantial, disputed federal question that can be heard in federal court without disrupting the federal-state balance. Plaintiffs' contrary arguments lack merit.

### A.    Plaintiffs' Claims of Unilateral Abuse of Market Power Necessarily Raise a Federal Question.

Under the *Grable* doctrine, a federal question is deemed "necessary" to a plaintiff's claim if federal law must be applied in order to determine the outcome. *Gunn*, 568 U.S. at 259. That is true here.

---

[2] The "artful pleading doctrine" prevents a plaintiff from "avoid[ing] federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." *Lippitt*, 340 F.3d at 1041. Plaintiffs assert that this doctrine only applies when a federal statute completely preempts a state law claim, and the Sherman Act is not a statute for which "complete preemption" applies. Mot. at 4. Complete preemption is not necessary to support removal. Plaintiffs do not and cannot dispute that federal jurisdiction lies where, as here, the four *Grable* factors are satisfied. That is why there are numerous decisions confirming that complaints that allege federal antitrust violations under the guise of state law causes of action can be removed where the *Grable* factors are met. *E.g.*, *Rosenman*, 2021 WL 3829549; *Sunday Ticket*, 2016 WL 1192642; *Nat'l Credit Reporting*, 2004 WL 1888769.

Plaintiffs' Complaint alleges only independent, unilateral conduct by each Defendant as to features of their own products and terms of service. Because California's Cartwright Act applies only to "a combination of capital, skill or acts by two or more persons," Cal. Bus. & Prof. Code § 16720, the Ninth Circuit has long held that claims challenging "only unilateral conduct" are "not cognizable under the Cartwright Act." *Dimidowich* v. *Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986), *opinion modified on denial of reh'g*, 810 F.2d 1517 (9th Cir. 1987); *see Free Freehand Corp.* v. *Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1185 (N.D. Cal. 2012). Accordingly, "there cannot be a violation of the Cartwright Act" without "sufficient allegations of the existence of an unlawful trust, combination or agreement." *Somerville* v. *Stryker Orthopaedics*, 2009 WL 113369, at *1 (N.D. Cal. Jan. 16, 2009) (White, J.). Nor does any other "California statute deal[ ] expressly with monopolization or attempted monopolization." *Dimidowich*, 803 F.2d at 1478. Rather, Section 2 of the Sherman Act—a federal antitrust law—governs "the conduct of a single firm." *Copperweld Corp.* v. *Indep. Tube Corp.*, 467 U.S. 752, 767 (1984).

For these reasons, California federal district courts have repeatedly taken jurisdiction over claims alleging that a firm is unilaterally abusing its market power to impose increased prices or disadvantageous non-price terms, even where plaintiffs have styled those claims under California law. *Sunday Ticket*, 2016 WL 1192642, at *6, 7; *Rosenman*, 2021 WL 3829549, at *4, 7; *Nat'l Credit Reporting*, 2004 WL 1888769, at *3, 5. According to those cases, claims nominally arising under California law "that rely on a defendant's unilateral abuse of its monopoly position require establishing a violation of federal antitrust law." *Rosenman*, 2021 WL 3829549, at *4.

*Sunday Ticket* is instructive. There, the plaintiff alleged that DirecTV "abused their monopoly position" over the broadcast of Sunday NFL games by charging California consumers "unreasonably high, supra-competitive prices for its NFL Sunday Ticket programming." 2016 WL 1192642, at *1, 4. The plaintiff asserted claims under the California Legal Remedies Act, the unfair prong of the UCL, and quasi-contract/unjust enrichment under California law. *Id.* at *1. The defendant removed the action to federal court, and the court held that the complaint necessarily raised a federal question. *Id.* at *6. The court reasoned that the "monopolistic conduct" alleged in the complaint was "only actionable under Section 2 of the Sherman Act, particularly where '[n]o

California statute deals expressly with monopolization.'" *Id.* at *5. Although on their face, the plaintiff's claims were based on allegations of unconscionability, the court explained that without the allegations of DirecTV's abuse of monopoly position, "no alternative and independent unconscionability theory would remain," and each of plaintiff's claims would fail as a matter of law. *Id.* at *4. Judge O'Connell accordingly concluded the complaint "necessarily raised" a federal issue and denied remand. *Id.* at *6, 7.

Judge Koh similarly denied remand in *Rosenman*. The plaintiff in that case alleged that "Facebook abused its monopoly position to force consumers to accept worse privacy settings." 2021 WL 3829549, at *4. According to the plaintiff, Facebook allegedly "leveraged its popularity to successfully degrade privacy to levels unsustainable in the earlier market," when Facebook had lacked significant market power. *Id.* Noting that such "unilateral monopolistic conduct is only actionable under Section 2 of the Sherman Act," Judge Koh found that the plaintiff's nominal UCL "claim necessarily raises a federal issue" because it would require the court "to interpret and apply federal antitrust statutes, case law, and policies" and denied remand. *Id.* at *5, 7.

Finally, in *National Credit Reporting*, the plaintiff brought claims against three separate entities but failed to allege any agreement or conspiracy among them. The court determined that the "gravamen of plaintiff's complaint was that each defendant had unilaterally engaged in anticompetitive conduct to maintain or augment its monopoly." 2004 WL 1888769, at *3. Judge Alsup concluded that the plaintiff "asserted only claims for monopolization or attempted monopolization under Section 2 of the Sherman Act" and declined to remand the case. *Id.* at *3–5.

Plaintiff's Complaint here likewise gives rise to federal jurisdiction because, as in these other cases, Plaintiffs' theory is that Uber and Lyft each independently abused its alleged market power by requiring drivers to accept allegedly unfavorable terms. Just as the plaintiff in *Sunday Ticket* alleged that DirecTV "abused" its "monopoly position" by "imposing unreasonably high prices," Plaintiffs here challenge each company's unilateral "pricing strategy," Compl. ¶ 46, and allege that "Uber and Lyft have both repeatedly decreased the pay provided to drivers, and increased the fare charged to passengers," *id.* ¶ 106. Just as the plaintiff in *Rosenman* alleged that

Facebook "leveraged its popularity to successfully degrade privacy," Plaintiffs here challenge certain pricing programs that each company allegedly can impose because of their "leverage over drivers." *Id.* ¶ 73.  The plaintiff in *Rosenman* alleged that Facebook used its power to require Plaintiffs to cede "ever-increasing amounts of their personal data to use its platform," 2021 WL 3829549, at *5, and Plaintiffs here similarly allege that Uber and Lyft require drivers "to surrender their pricing autonomy to Uber and Lyft as a condition of working with the companies," Compl. ¶ 34.  Like in *National Credit Reporting*, the "gravamen" of Plaintiffs' Complaint is that "each defendant ha[s] unilaterally engaged in anticompetitive conduct to maintain or augment" their market power.  2004 WL 1888769, at *3.

In short, Plaintiffs allege that each Defendant requires drivers to "submit to the quality and stipulations of [each company's] product or forgo all use of" the product.  *Rosenman*, 2021 WL 3829549, at *4.  As multiple courts have held, that theory of unilateral abuse of market power implicates only federal monopolization law, not California law, and thus necessarily raises a federal question.

**B.      Plaintiffs' Contrary Arguments Are Unpersuasive**

None of Plaintiffs' arguments as to why this Court should remand this case have merit.

*First*, Plaintiffs argue that their claims all sound in state law because they are "premised on vertical agreements."  Mot. at 5.  That argument does not distinguish *Sunday Ticket* or *Rosenman*.  The plaintiff in *Sunday Ticket* alleged claims "based on Plaintiff's allegations that Defendants' contracts with Plaintiff and other similarly-situated California consumers contain[ed] unfair and unconscionable price provisions."  2016 WL 1192642, at *1.  Similarly, the plaintiff in *Roseman* challenged the terms of Facebook's "privacy policy."  2021 WL 3829549, at *1.  Thus, even if Plaintiffs had actually alleged that each company's unilateral conduct were embodied in each company's respective agreements with its drivers, that would not change the fact that Plaintiffs' claims allege that each Defendant unilaterally abused its market power by unilaterally imposing allegedly harmful terms, which necessarily raises only a federal issue.

Moreover, Plaintiffs' Complaint could not support the vertical agreements they claim to have alleged, or their UCL claim allegedly predicated on such vertical agreements, because they

7

1  have not made "sufficient allegations of the existence of an unlawful trust, combination or agreement" required by the Cartwright Act. *Somerville*, 2009 WL 113369, at *1. A company's refusal to deal with dealers who will not comply with that company's policy coupled with the dealers' voluntary acquiescence to the policy does not constitute an unlawful combination. *Chavez v. Whirlpool*, 93 Cal. App. 4th 363, 372–73 (2001). Conduct that is permissible under this principle "cannot be deemed 'unfair' under the unfair competition law." *Chavez*, 93 Cal. App. 4th at 375.

*Beverage v. Apple Inc.* illustrates that nothing more than unilateral conduct has been alleged here. Case No. 20CV370535, at *7–9 (Cal. Super. Aug. 29, 2022), *available at* Santa Clara Superior Court Case Information Portal. In *Beverage*, the court rejected a theory that Apple was party to an unlawful agreement based on allegations that Apple "forces developers to pay [Apple's] 30 percent fee and abide by other terms stated in its contracts." *Id.* at *7. The court held that the plaintiffs alleged only "open, unilateral conduct by Apple, essentially a 'take it or leave it' deal—not threats, boycotts or other such 'affirmative action' to coerce developers into a conspiracy with Apple against others." *Id.* The same principle applies here where each company has unilaterally determined which features and services of its products to make available, and drivers have voluntarily agreed to each company's terms. Plaintiffs' motion makes reference to their allegations that the terms challenged here are "coercive," but the Motion does not explain why that label, devoid of factual allegations, means that Plaintiffs have alleged anything other than unilateral conduct.

*Second*, Plaintiffs argue that *Sunday Ticket* and *Rosenman* were "wrongly decided" in light of the Supreme Court's decision in *Merrill Lynch, Pierce Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 391 (2016).[3] But Plaintiffs misread *Merrill Lynch*, which reaffirmed the standards applied in *Sunday Ticket* and *Rosenman*. The question presented in that case was whether "the jurisdictional test established by [Section 27 of the Securities Exchange Act] is the same as the one used to decide if a case 'arises under' a federal law." *Id.* at 377. The Supreme Court answered that question in the affirmative. It then affirmed remand to state court because the defendant "did not challenge" the Third Circuit's ruling that, under the correct standard, "all his claims sought relief

---

[3] Plaintiffs also claim, "[e]ven without *Merrill Lynch*, though, *Rosenman*'s reasoning and analysis are wrong." Mot. at 9. Plaintiffs provide no explanation or support for this conclusion.

under state law and none necessarily raised a federal issue." *Id.* at 393.  In reaching that decision, the Supreme Court rejected the argument that Plaintiffs make here, *viz.*, that federal jurisdiction lies only if a claim is "brought directly under" a federal statute, and that if "the complaint brings only state-created claims, then the case belongs in a state forum" even if "the success of the state claim necessarily hinges on proving that the defendant breached an [federal statutory] duty." *Id.* at 382.  Rather, citing its prior decisions in *Grable* and *Gunn*, the Supreme Court reaffirmed that federal jurisdiction lies over a "state-law claim" where "the claim's very success depends on" federal law.  *Id.* at 383–84.  The courts in *Sunday Ticket* and *Rosenman* took federal jurisdiction in that very circumstance, applying the very same legal standard.

*Third*, Plaintiffs oppose remand by arguing that their UCL claims are premised on a violation of California's supposed common law rule against monopolization.  This theory appears nowhere in Plaintiffs' Complaint.  Even if Plaintiffs had pled such a theory, a "plaintiff may not maintain a monopoly claim based upon California common law." *Lorenzo* v. *Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1305–06 (S.D. Cal. 2009) (citing "legislative history concerning an attempt in 2002 to amend the Cartwright Act, where the Attorney General of the State of California reported to the Senate that according to the Attorney General's Office, the remedies for illegal monopolization are limited under current law to relief in a federal court" (cleaned up)).

Plaintiffs do not cite any legal authority to the contrary.  None of their cases recognize a common law monopoly claim under California law. *In re Cipro Cases I & II*, 61 Cal. 4th 116, 163 (2015) (reversing summary judgment on common law monopoly claim on the basis that the trial court used "the same reasoning it applied to the Cartwright Act claim," which the court said was "erroneous" without providing any analysis as to the common law monopoly claim); *In re Cipro Cases I & II*, 121 Cal. App. 4th 402, 407 (2004) (providing no analysis of common law monopoly claim); *Burdell* v. *Grandi*, 152 Cal. 376, 383 (1907) (finding restrictions imposed to create a monopoly were void as against public policy without indicating there exists a common law claim against abuse of monopoly power); *Exxon Corp.* v. *Sup. Ct.*, 51 Cal. App. 4th 1672, 1687 (1997) (discussing alleged business tort of monopolization without finding in plaintiffs' favor).  Nor do Plaintiffs attempt to reconcile their common law monopolization theory with *Sunday Ticket*,

1  *Rosenman*, or *National Credit Reporting*, all of which held that unilateral monopolistic conduct
2  does not give rise to a claim under California state law.

3    *Fourth*, Plaintiffs have not invoked the prohibition on "secret" payments in Section 17045
4  to defeat federal jurisdiction and thus have forfeited that argument.  Even if Plaintiffs had relied on
5  a Section 17045 theory in opposing remand, it would not have availed them.  The Court in *Sunday*
6  *Ticket* found that the plaintiff's UCL theory necessarily raised a federal issue even though the
7  plaintiff alleged a distinct claim for violation of a California statute, the Consumer Legal Remedies
8  Act.  2016 WL 1192642, at *5.  Thus, Plaintiffs' assertion of a Section 17045 claim alone does not
9  preclude federal jurisdiction.

10    Moreover, as in *Sunday Ticket*, Plaintiffs have not pled a Section 17045 claim "if the Court
11  disregard[s] Plaintiff's allegations regarding Defendants' monopolistic conduct," *id.*, which
12  includes each company's "pricing strategy."  Compl. ¶ 46.  Section 17045 is "aimed at preventing
13  a distributor from discriminating between customers," and a claim under it is defective where a
14  plaintiff "fails to allege facts from which a court might properly infer" such discrimination.  *Chi.*
15  *Title Ins. Co.* v. *Great W. Fin. Corp.*, 69 Cal. 2d 305, 323 (1968).  The statute does not apply where
16  payments, commissions, and privileges are "extended to all purchasers purchasing upon like terms
17  and conditions.'"  *Harris* v. *Capitol Recs. Distrib. Corp.*, 64 Cal. 2d 454, 463 (1966).  Plaintiffs
18  have not alleged that Uber or Lyft secretly offers better deals to some drivers that are not available
19  to others or applies different algorithms to different drivers.  Instead, Plaintiffs merely allege that
20  Uber and Lyft use proprietary algorithms that offer incentives to some drivers who qualify but not
21  to other drivers who do not.  Plaintiffs cite no authority that California's Unfair Practices Act
22  prohibits a firm from setting prices using a proprietary method that considers certain variables in
23  determining which customers qualify for certain incentives.  As such, Plaintiffs' challenge to
24  Uber's and Lyft's "pricing strategy," Compl. ¶ 46, reflects only the alleged unilateral abuse of
25  market power, which courts have held implicates only federal monopolization law—regardless of
26  the state law label plaintiffs put on the claim.

27    *Fifth*, even if Plaintiffs' allegations of unilateral monopolistic conduct could support a claim
28  under the "unfair" prong of the UCL (they cannot), they cannot support a claim under the

"unlawful" prong without reference to federal law. As shown above, Plaintiffs' allegations cannot support their claims under the Cartwright Act or Unfair Practices Act. If Plaintiffs' UCL "unlawful" prong claim survives, it will therefore be predicated upon the implied Sherman Act Section 2 claim their Complaint pleads. *Nat'l Credit Reporting*, 2004 WL 1888769, at *3 (UCL unlawful prong claim necessarily raised federal issue because "the gravamen of plaintiff's complaint was that each defendant had unilaterally engaged in anticompetitive conduct").

*Finally*, Plaintiffs' reliance on *Molina Healthcare, Inc.* v. *Celgene Corp.*, 2022 WL 161894 (N.D. Cal. Jan. 18, 2022), is misplaced. California law was not decisive in *Molina* because the plaintiffs in that case "asserted that [the defendant] violated a host of other states' antitrust and consumer protection statute[s], at least some of which encompass claims for monopolization." *Id.* at *11. Plaintiffs have not alleged any such claims. They rely entirely on California law, which does not support any theory of unilateral abuse of market power and thus cannot defeat remand. *Molina* also did not address whether alleged unilateral anticompetitive conduct necessarily implicates a federal issue under the UCL's "unlawful" prong, as the analysis in that case turned entirely on the plaintiff's UCL "unfair" prong claim. *Id.* at *7.

### C. The Federal Questions Necessarily Raised by Plaintiffs' Claims Are Disputed, Substantial, and Can Be Resolved in a Federal Court Consistent with Principles of Federalism.

Because Plaintiffs' Complaint necessarily raises a federal question, the Court must next consider the three remaining elements under the *Grable* doctrine: whether the federal question is actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn*, 568 U.S. at 258. Plaintiffs' Motion to Remand says nothing about those factors, focusing only on the presence of a federal issue. That is unsurprising, because each of those factors is clearly satisfied here.

Uber and Lyft deny the allegations in Plaintiffs' Complaint, including all allegations that they each have market power and each allegedly abuse that market power. Accordingly, the federal issue is actually disputed.

The final two factors, requiring a determination of whether the federal question is substantial and capable of resolution in federal court without disrupting the federal-state balance,

pose a single inquiry. A federal question is substantial if it is "significant to the federal system as a whole." *Id.* at 264; *see Grable*, 545 U.S. at 309. Here, the federal system has a strong interest in Plaintiffs' artfully pleaded federal antitrust claims because claims brought under the Sherman Act "are within the exclusive jurisdiction of the federal courts." *Marrese* v. *Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985). A California state court thus cannot preside over Plaintiffs' claims for the unilateral abuse of market power. *Eichman* v. *Fotomat Corp.*, 759 F.2d 1434, 1437 (9th Cir. 1985); *U.S. Golf Ass'n* v. *Arroyo Software Corp.*, 69 Cal. App. 4th 607, 623–24 (1999). And given federal courts' exclusive jurisdiction over Sherman Act claims, exercising jurisdiction would not "disrupt[] the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. That is why Judge Alsup in *National Credit Reporting*, Judge O'Connell in *Sunday Ticket*, and Judge Koh in *Rosenman* all denied remand when faced with complaints that involved allegations of unilateral monopolistic conduct.

### V.  CONCLUSION

Plaintiffs' purported state law claims for unilateral abuse of market power necessarily raise federal questions that are disputed and substantial, and should be resolved in federal court. Uber and Lyft therefore respectfully request that this Court deny Plaintiffs' Motion to Remand.

| | | |
|---|---|---|
| 1 | Dated: September 28, 2022 | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| 2 | | |
| 3 | | By: */s/ Karen L. Dunn* |
| | | Karen L. Dunn (*pro hac vice*) |
| 4 | | kdunn@paulweiss.com |
| | | William A. Isaacson (*pro hac vice*) |
| 5 | | wisaacson@paulweiss.com |
| | | Kyle N. Smith (*pro hac vice*) |
| 6 | | ksmith@paulweiss.com |
| | | Erica Spevack (*pro hac vice*) |
| 7 | | espevack@paulweiss.com |
| | | 2001 K Street, NW |
| 8 | | Washington, DC 20006 |
| | | Telephone: (202) 223-7300 |

Joshua Hill Jr. (SBN 250842)
jhill@paulweiss.com
R. Rosie Vail (SBN 317977)
rvail@paulweiss.com
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100

*Attorneys for Defendant*
UBER TECHNOLOGIES, INC.

Dated: September 28, 2022    **MUNGER, TOLLES & OLSON LLP**

By: */s/ Justin P. Raphael*
Rohit K. Singla (SBN 213057)
Rohit.Singla@mto.com
Justin P. Raphael (SBN 292380)
Justin.Raphael@mto.com
560 Mission Street
San Francisco, CA 94105
Telephone: (415) 512-4000

*Attorneys for Defendant*
LYFT, INC.

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that the other signatories have concurred in this filing.

Dated: September 28, 2022                          By:    /s/ *Karen L. Dunn*
                                                          Karen L. Dunn